UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**GALVIN GIBSON**                                                                                       **PETITIONER**
Reg. #33883-112

V.                                        No. 2:22-CV-00146-BSM-ERE

**JOHN YATES, Warden**
**FCI Forrest City**                                                                                   **RESPONDENT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. The parties may file objections to all or part of this Recommendation. Filed objections must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of the Court within fourteen days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

**I.      INTRODUCTION**

On August 24, 2022, Galvin Gibson, an inmate at the Federal Correctional Institution in Forrest City, Arkansas, filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus (*Doc. 1*), alleging due process violations during a disciplinary hearing, which resulted in the loss of good time credits, a change in his classification, and a suspension of other privileges. *Doc. 2 at 5*. Respondent filed a brief in opposition. *Doc. 7*. The Court gave Mr. Gibson until October 10, 2022 to file a reply, but, to

1

date, he has not filed one. For the reasons set out below, the Court recommends that petition be denied, and the case be dismissed, with prejudice.

date, he has not filed one. For the reasons set out below, the Court recommends that petition be denied, and the case be dismissed, with prejudice.

## II. DISCUSSION[1]

### A. Factual Background

On December 1, 2020, Officer C. Banoy[2] saw Mr. Gibson and another inmate fighting. He broke up the fight and filed an incident report. *Doc. 7-5 at 17*. Later that day, Lt. M. Anderson[3] delivered a copy of the incident report to Mr. Gibson. *Id. at 17, 44*. The incident was referred to a disciplinary hearing officer ("DHO") for consideration. Following a disciplinary hearing, DHO Joseph Potts issued a final report on December 16, 2020, and found Mr. Gibson guilty of the disciplinary infraction. As punishment, Mr. Gibson: (1) lost 27 days of good time credit ("GTC"); (2) lost commissary, phone, and visitation privileges for 90 days; and (3) spent seven days in the special housing unit ("SHU"). *Doc. 7-5 at 12*. During the appeal, Mr. Gibson argued that he was assaulted by another inmate and only defending himself. *Id. at 15, 56*. He makes the same argument in his habeas petition. *Doc 2 at 2*.

Mr. Gibson contends the disciplinary hearing process and the conviction itself violated his due process rights. *Doc. 1 at 8*.

---

[1] Mr. Gibson's petition includes a discussion about exhaustion. *Doc. 2 at 3-4*. However, Respondent concedes that Mr. Gibson exhausted his administrative remedies. *Doc. 7 at 4*.

[2] Officer Banoy's first name is not in the records or referenced by Respondent.

[3] Lt. Anderson's first name is not in the records or referenced by Respondent.

2

**B.     Legal Standard**

A prison disciplinary conviction that results in the loss of good time credit may implicate a liberty interest protected by the Due Process Clause.[4] *Wolff v. McDonnell*, 418 U.S. 539, 555-558 (1974). Because "the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment . . . the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

In such cases, an inmate is entitled to receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Id. at 454* (citing *Wolff*).

In addition to these procedural protections, the disciplinary decision itself must be supported by "some evidence in the record." *Id.* at 455-56.

---

[4] Only Mr. Gibson's loss of good time implicates a liberty interest protected by the Due Process Clause. See *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (noting that prison classification and eligibility for rehabilitative programs in federal system are matters delegated by Congress to discretion of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"); *Henson v. Manus*, No. 5:08CV00048-WRW-HLJ, 2009 WL 530374, at *4 (E.D. Ark. Mar. 3, 2009) (holding that there is no liberty interest in commissary, telephone, visitation, and recreation privileges).

### C. The Disciplinary Proceeding Did Not Violate Mr. Gibson's Right to Procedural Due Process

Mr. Gibson asserts that he was not provided a copy of the original disciplinary report within 24 hours. *Doc. 2 at 2*. Yet, a few paragraphs before this assertion, Mr. Gibson alleges that he "was given written notification that he was being charged with . . . 'fighting with another person'" the same day he was assaulted. *Id*. The undisputed evidence also indicates that Mr. Gibson received a copy of the report on December 1, 2020 at 7:05 p.m. *Doc. 7-5 at 17*.

Mr. Gibson argues that he was not provided a copy of the DHO's final report. *Doc. 2 at 4*. However, the unrefuted evidence shows that Mr. Gibson received a copy of the final report on December 16, 2020 at 13:00. *Doc. 7-5 at 44*.

Mr. Gibson contends that he was not allowed to call witnesses. *Doc. 2 at 5*. Yet, the record shows that he repeatedly told staff that he did not want to call witnesses. *Doc. 7-5 at 19, 22*. Mr. Gibson also elected not to testify during the hearing. During his appeal, Mr. Gibson explained that when he appeared before DHO Potts he was "unable to give . . . a statement" because he was afraid of retaliation from his assailant or the assailant's family for snitching. *Doc. 7-5 at 16*. The record shows that Mr. Gibson made the decision not to testify or call witnesses during the hearing. He cannot blame that decision on anyone but himself. Nor can he use this habeas proceeding as an opportunity to offer belated self-defense testimony.

Mr. Gibson also argues that DHO Potts refused to give him a copy of the final summary report, thereby preventing his appeal of the disciplinary conviction. *Doc. 2 at 3*. Again, the record shows that Mr. Gibson received a copy of the summary report on December 16, 2020 at 13:00. *Doc. 7-5 at 44*. In addition, Mr. Gibson did appeal, but the ruling was unfavorable. In fact, during the appeal, Mr. Gibson admitted that he "received [his] DHO report." *Doc. 7-5 at 58*.

The record demonstrates that Mr. Gibson received the minimum constitutional requirements required by *Wolff*. Accordingly, his procedural due process challenge fails.

### D. The Disciplinary Decision was Supported By "Some Evidence" and Did Not Violate Mr. Gibson's Substantive Due Process Rights

In assessing whether "some evidence" supported the disciplinary decision, the Court's review is limited and "does not require an examination of the entire record, independent assessment of witness credibility, or weighing of the evidence." *Hill*, 472 U.S. at 455-56. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. A disciplinary violation report "from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). The DHO may also rely on hearsay. *Moore v. Plaster*, 313 F.3d 442, 444 (8th Cir.

5

2002). Finally, an inmate's "own admissions clearly constitute some evidence." *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990).

The record shows that DHO Potts relied on: (1) an incident report, written by an officer who was an eyewitness to the fighting; (2) Mr. Gibson's admission that "Yes, the incident report is true"; (3) Mr. Gibson's statement at the hearing that "yes, that is the inmate . . . I was in a little tussle with"; (4) pictures of the injuries the victims sustained; and (5) the medical assessments. *Doc. 7-5 at 12*. This is more than sufficient to satisfy the "some evidence" standard. In fact, Mr. Gibson's admission alone provided the DHO with "some evidence" to support his finding of guilt.

Mr. Gibson's arguments are either disproved by the record, irrelevant to the Court's analysis, or both. For example, Mr. Gibson complains that no medical assessment was provided to DHO Potts. *Doc. 2 at 7*. To the contrary, the DHO wrote in his report that he relied on the medical assessments. *Doc. 7-5 at 12*. Mr. Gibson also asserts that had the DHO looked at the incident report, he would have seen where Officer Banoy wrote "Gibson's attempted retaliation was not an offensive move, but an attempt to fend off an assault." *Doc. 2 at 5*. This does not appear in the report.[5] Rather, the report says the officer witnessed both inmates "striking each other with closed fist punches to the head and upper torso areas." *Doc. 7-5 at 17*.

---

[5] Had this statement appeared in the report, it would not contradict the DHO's finding that Mr. Gibson was fighting with another person.

Even if these arguments were factually accurate, they would not entitle Mr. Gibson to habeas relief.

Because the DHO's decision to find Mr. Gibson guilty is supported by "some evidence," Mr. Gibson's substantive due process challenge fails.

### III. CONCLUSION

IT IS HEREBY RECOMMENDED that Petitioner Galvin Gibson's petition for writ of habeas corpus (*Doc. 1*) be dismissed, with prejudice.

Dated this 2nd day of December, 2022.

_____
UNITED STATES MAGISTRATE JUDGE